Argued and submitted February 28, resubmitted In Banc June 6, vacated and remanded August 15, reconsideration denied December 19, 1990, petition for review denied February 19, 1991 (311 Or 166)

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD JONES,
*Appellant.*

(8812-38230; CA A60852)

796 P2d 670

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Acting Public Defender, Salem.

Jas Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and Virginia L. Linder, Solicitor General, Salem.

ROSSMAN, J.

Buttler, J., dissenting.

**ROSSMAN, J.**

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, in a trial on stipulated facts after his motion to suppress was denied. He assigns as error the trial court's refusal to suppress evidence seized after he was arrested for public indecency. ORS 163.465. We vacate the judgment and remand.

On November 28, 1988, at approximately 1 a.m., while on routine patrol in the Old Town area of Portland, police officers Barbour and Schilling observed defendant zipping up his pants, apparently after urinating on the sidewalk. They approached defendant and informed him that he had committed a misdemeanor by exposing himself in public, in addition to having violated a city ordinance by urinating on the sidewalk.

Defendant's appearance and conduct aroused Barbour's apprehensions. Barbour testified that defendant was upset by the police contact: "He was moving back and forth; wouldn't hold still; wouldn't stand still; just appeared to be nervous in my opinion." Because defendant was wearing a long outer coat over a short jacket, Barbour thought that he could be carrying a weapon of some type. Barbour testified that, "[d]ue to his nervous behavior, the clothing that he was wearing and the fact that he had committed a misdemeanor in our presence, I felt the need to check [defendant]. * * * For my safety, I wanted to check him." Barbour began to pat down defendant for weapons. Although Barbour was unable to discern from a pat-down of the outer clothing what was in defendant's back pocket, he felt a "large bulge" that filled the pocket and was "square" and "hard." He thought that it "could have been a striking instrument; * * * a case holding a knife; it could have been a gun."

Although defendant offered no resistance to the pat-down, when Barbour reached the area of his back pocket, he pushed Barbour's hand away. Barbour pinned defendant's arms and again attempted to pat-down that area; defendant again pushed him away. A struggle ensued in which the officer and defendant fell to the ground, after which defendant was handcuffed.

At some point,[1] Barbour reached into defendant's back pocket and removed the large square object, which turned out to be a billfold that was overflowing with business cards and papers. Barbour testified that the billfold fell open in his hands, at which time he saw a bindle of blue folded paper. He opened the bindle and found what laboratory tests later revealed to be cocaine. However, both defendant and his colleague testified that Barbour placed the billfold on the hood of the police car and searched its contents for approximately one minute.

The first issue is whether Barbour exceeded the permissible scope of a search incident to arrest when he removed the wallet from the pocket. Defendant concedes that an officer is justified in conducting a limited pat-down of an arrestee for weapons "to protect the officer or to prevent escape." *State v. Owens,* 302 Or 196, 200, 729 P2d 524 (1986). He argues, however, that the search in this case was unreasonably intrusive, because Barbour could have identified the "large bulge" in his pocket as a wallet with his fingers.

That contention is preposterous. An officer is not required to conduct a safety search by braille. Barbour testified that he recognized the object, described as being from three to four inches thick, as a billfold only *after* he removed it. Assuming that he was truthful, he was entitled to examine it briefly to make sure that it could not be used to injure him.

The more difficult issue is whether Barbour's discovery of the bindle was lawful. He testified that, when he removed the wallet, it fell open in his hands and he then saw the bindle. If that is true, it was lawfully discovered, because no search occurred. Defendant testified, however, that Barbour first handcuffed him and then searched his wallet on the hood of the police car for about a minute. Citing *State v. Owens, supra,* 302 Or at 200, he argues that the search of the wallet exceeded the permissible scope of a search incident to arrest, because it was not conducted to find evidence of the crime for which he was arrested, to prevent the destruction of evidence or to protect the officer.

---

[1] It is unclear from the record just when Barbour removed the wallet. Defendant testified that it was before the scuffle. Barbour testified that it was after he had handcuffed defendant. The trial court did not make a specific finding.

The trial court found it unnecessary to resolve that conflict in the testimony. Instead, it reasoned that, under *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), an officer may search an arrestee, not only for evidence and weapons, but also may "go through wallets, make sure that he has nothing that would allow him to effect an escape[.]" That would be correct, *if* Barbour had testified that he had searched the wallet for items with which defendant could have effected an escape and the search was reasonable under all the circumstances.[2] *State v. Smith,* 103 Or App 113, 117, 796 P2d 665 (1990). Because he did not so testify, however, the search of the wallet, if it occurred, cannot be justified on the basis of prevention of escape.

The circumstances under which Barbour discovered the paper bindle are dispositive. We must remand for findings on those circumstances.

The judgment is vacated; the case is remanded for findings of fact about the circumstances of the discovery of the bindle; if the trial court finds that the officer had formed a reasonable belief that what turned out to be a wallet was a weapon, that he recognized it as a wallet only after removing it and that he discovered the bindle when the wallet spontaneously fell open, it will reinstate defendant's conviction; if it finds that the officer's belief was unreasonable, that he knew that the object was a wallet before removing it or that he

---

[2] The dissent bases its argument on a single sentence in *State v. Owens,* 302 Or 196, 729 P2d 524 (1986), which it takes out of context.

"Under the Oregon Constitution, a warrantless search of the arrestee's person incident to arrest was traditionally justified to protect the officer and to preserve crime evidence from destruction or concealment. In *State v. Caraher, supra,* this court reshaped the second justification for searches incident to arrest (to preserve evidence) in several important respects. Under Article I, section 9, a search incident to arrest for crime evidence is limited to a search for evidence of the crime for which the arrestee is arrested. In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence of which reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest. * * * *Of course, a pat-down or limited search for weapons to protect the officer or to prevent escape would be justified whenever a person is taken into custody.*" 302 Or at 200. (Emphasis supplied; footnote omitted.)

Read as part of the larger discussion, the emphasized language means simply that an officer's search for weapons after an arrest is *always* justified to protect himself or to prevent escape. It does *not* say, nor does it mean, that weapons are the only objects for which an officer may search in order to prevent an arrestee's escape. *See State v. Smith, supra.*

discovered the bindle during an intentional search of the wallet, the court will allow the motion to suppress and grant a new trial.

**BUTTLER, J.,** dissenting.

I dissent for the reasons stated in my dissent in *State v. Smith,* 103 Or App 113, 796 P2d 665 (1990), and because I do not believe that remanding the case for the findings that the majority considers to be decisive will cure the problem.

The trial court stated:

"I'm finding that he had a legal justification under *Caraher,* now that he's got this man under arrest, he's got him in custody, to take his property pursuant to a search for a check for weapons, to make sure there aren't any. *You can go through wallets,* make sure that he has nothing that would allow him to effect an escape * * *." (Emphasis supplied.)

That overstates the scope of a permissible search incident to arrest. In *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), the court stated that, under the Oregon Constitution, "a valid custodial arrest does not alone give rise to a unique right to search. Such a warrantless search must be justified by the circumstances surrounding the arrest." 293 Or at 757. As pointed out in *State v. Owens,* 302 Or 196, 201, 729 P2d 524 (1986), *Caraher* rejected the federal rule that permits full searches of a person incident to any lawful custodial arrest. If evidence of the crime for which the arrestee has been arrested reasonably may be concealed on his person or in his personal effects, a thorough search may be justified. If, as here, no search for evidence of the crime that justified the arrest is involved, the officer is limited to a pat-down or limited search for weapons to protect the officer or to prevent escape. 302 Or at 200. If, during a pat-down, the officer reasonably believes that he has felt an object that may be a weapon, he may reach into the pocket for further examination. If, after doing that, he no longer has reason to believe that there is a weapon, he has no legitimate reason to remove the object from the pocket. *State v. Baker,* 100 Or App 31, 784 P2d 446 (1989); *State v. Boyd,* 101 Or App 649, 792 P2d 462 (1990). The majority effectively overrules both of those cases that were decided very recently.

Assuming that Barbour could not tell from the pat-

down whether the object in defendant's back pocket was a weapon, he had to have had a reasonable belief that it was a weapon in order to justify a more intensive search. He testified that he "*had no idea*" what the article was, but that the bulge "*could* have been a striking instrument; it *could* have been any number of things. It *could* have been a case holding a knife; it *could* have been a gun." (Emphasis supplied.) The trial court made no express finding that Barbour reasonably believed that the wallet was a weapon and, on this record, I do not believe that the evidence would support such a finding.

Even if we were to assume that the circumstances justified Barbour's reaching into defendant's pocket, it was no longer reasonable to believe that it was a weapon once it became apparent that the object was a billfold, and he no longer had authority to remove anything. *State v. Baker, supra; State v. Boyd, supra.* He should have left the wallet in defendant's pocket.

Because I would reverse and remand for a new trial, I respectfully dissent.

Joseph, C. J., and Warren and Newman, JJ., join in this dissent.