Argued and submitted November 29, 1989, resubmitted In Banc June 6, affirmed August 15, reconsideration denied December 19, 1990, petition for review allowed January 15, 1991 (311 Or 87)
See later issue Oregon Reports

## STATE OF OREGON,
*Respondent,*

*v.*

## JARRETT CLAY SMITH,
*Appellant.*

(10-88-09270; CA A51175)

796 P2d 665

David E. Groom, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

ROSSMAN, J.

Buttler, J., dissenting.

## ROSSMAN, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, assigning error to the denial of his motion to suppress evidence seized after he was stopped for a traffic infraction. We affirm.

At approximately 10 p.m. on October 2, 1988, Officer Donaca saw defendant illegally riding his bicycle without a headlight. Donaca stopped him and asked for identification. Defendant produced a driver's license, and Donaca ran a check on it. Before he received a reply, he asked defendant if he could search a small back pack that was strapped to the bicycle. Defendant said that he could, unzipped the pack, pulled out a poncho and a paper bag and said, "See, that's it." Donaca did not then examine the bag or its contents further.

Shortly thereafter, the records check revealed that defendant was wanted on two burglary warrants in Texas. Donaca conducted a pat-down before taking defendant into custody on those warrants. He testified that he was searching for "anything that can either be used against me or help him get out of the handcuffs. * * * In particular if I feel something small I'm looking for anything along the lines of a paper clip or fish hook or a handcuff key that somebody altered or shortened." He said, "I know from prior training that razor blades and handcuff keys * * * many times are taped inside a pocket or taped to the inside of the leg and it is accessed by a hole in the pocket." After the pat-down, Donaca reached inside the pocket of defendant's trousers with two fingers and felt a "small lumpy object."[1] He removed the object, saw that it was a plastic baggie and suspected that it contained hashish. He then placed defendant in the back of the patrol car and returned to search the pack attached to defendant's bicycle, where he found a small paper bag containing 1.64 ounces of marijuana.

In denying defendant's motion to suppress, the trial court held that Donaca, incident to the arrest, was entitled to "thoroughly search the defendant's person for items which could be used to harm the officer, or to aid the defendant in an

---

[1] Donaca initially testified that he felt the object during the pat-down. On cross-examination, however, he stated that he felt it only after reaching into defendant's pocket.

escape" and that, when he found any item on defendant's person, he was entitled to examine it to determine whether it could be used to cause harm to him or aid defendant in escaping. It justified the search of the pack on the bicycle, because defendant had consented and had not revoked his consent or because it was incident to defendant's arrest for possession of hashish.

1. The dispositive issue is whether the search of defendant's pocket exceeded the permissible scope of a search incident to arrest. In *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), the Supreme Court considered whether officers had the right to search a purse incident to its owner's arrest. The court observed that there are two traditional reasons for permitting a search incident to arrest:

> " 'first, * * * to protect the arresting officer *and to deprive the prisoner of potential means of escape,* * * * and, secondly, to avoid destruction of evidence by the arrested person.' " 293 Or at 758. *(Quoting United States v. Rabinowitz,* 339 US 56, 71-72, 70 S Ct 430, 94 L Ed 653 (1950); emphasis supplied.)

It noted that, under Oregon's constitution, the justification for searching the person of an arrestee incident to an arrest had been "expanded * * * beyond considerations of the officer's safety and destruction of evidence." Thus, the police could search the defendant's purse if it was relevant to the crime for which she was arrested and was reasonable under the circumstances. 293 Or at 759. The court did not limit an officer's right to make a reasonable search of an arrestee's *person* for items that could be used to harm the officer or to effect an escape.

In *State v. Owens,* 302 Or 196, 200, 729 P2d 524 (1986), the Supreme Court reiterated the holding in *Caraher:*

> "Under the Oregon Constitution, a warrantless search of the arrestee's person incident to arrest was traditionally justified to protect the officer and to preserve crime evidence from destruction or concealment. In *State v Caraher, supra,* this court reshaped the second justification for searches incident to arrest (to preserve evidence) in several important respects. Under Article I, section 9, a search incident to arrest for crime evidence is limited to a search for evidence of the crime for which the arrestee is arrested. In order to justify a search, incidental to an arrest, the arrest must be for a crime, evidence

of which reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest. Thus, for example, if the person is arrested for a crime which ordinarily has neither instrumentalities nor fruits which could reasonably be concealed on the arrestee's person or in the belongings in his or her immediate possession, no warrantless search for evidence of that crime would be authorized as incident to that arrest. Of course, a pat-down or limited search for weapons to protect the officer or to prevent escape would be justified whenever a person is taken into custody." 302 Or at 200. (Footnote omitted.)

Like *State v. Caraher, supra, Owens* involved the scope of the second justification, *i.e.,* preservation of evidence. Thus, it did not narrow the circumstances in which an officer can search an arrestee for purposes of protecting himself or preventing escape. Other than recognizing that an officer's pat-down for weapons in an arrest is *always* justified to protect himself or to prevent escape, it said nothing about the type of objects for which an officer can search in order to prevent an escape.

Under *Caraher* and *Owens,* therefore, the traditional rules regarding a search of an arrestee's *person* remain intact. That is, an officer continues to be entitled to search an arrestee for any weapon, tool or implement that could aid in his escape. The only limitation on that right is that the search must be reasonable in time, scope and intensity in view of all the facts.[2] *State v. Caraher, supra,* 293 Or at 759.

---

[2] The dissent's concern that we have gutted *State v. Caraher, supra,* is unfounded. Contrary to its understanding, our holding does not grant an unqualified right to search an arrestee's person incidental to an arrest. Rather, it permits an officer to search for items with which an arrestee could escape only (a) when the officer articulates a concern about the possibility of escape and (b) the search is reasonable under all the circumstances. That rule achieves the proper balance between an arrestee's right to be free from unreasonable intrusions into his privacy and an officer's right to protect his own safety and to prevent the arrestee's escape. By contrast, the dissent's rule would prohibit an officer from searching for items that could be used to escape under *any* circumstances, *e.g.,* even when he knew that the arrestee had used small implements to escape in the past.

The remainder of the dissent's analysis simply begs the question. First, the fact that the officer "did not say that he believed that object was a weapon" has nothing to do with the issue before us, which is whether he could search for implements of escape. Second, it is obvious that an officer will not always be able to feel small items such as paper clips or keys through heavy clothing during a pat-down search. The issue in this case is whether he nevertheless has a right to search for them, when he expresses a reasonable concern about the possibility of escape. Thus, the fact that Officer Donaca "did not even feel the 'small and lumpy' object in defendant's pocket during the pat-down" is irrelevant. 103 Or App at 121.

In *State v. Baker,* 100 Or App 31, 784 P2d 446 (1989), we considered whether a search that was justified on the basis of "protection of the officer" met that standard.[3] We noted that

> "[t]here was nothing to suggest that defendant might be carrying a dangerous weapon that [the officer] could not detect by a patdown. Neither the blotter of LSD nor the marijuana could feel like a weapon from the outside. Defendant was cooperative throughout the arrest and search and had no history of violence." 100 Or App at 34.

Accordingly, we held that "[i]t was not reasonable to search defendant's pockets for the officer's protection."[4] 100 Or App at 34.

Defendant's situation is different in important respects. Donaca had just arrested him on two warrants for burglary. He specifically testified that the purpose for searching was not only to confiscate any weapon that defendant might have, but also to deprive him of any means of escape. He indicated that it was not always possible to feel a razor blade or handcuff key through an individual's outer clothing during a pat-down and that defendant's trousers were made of "[h]eavy material, army type." Moreover, he knew that he would have to transport defendant to jail in the back of his patrol car, at night, alone. As the prosecutor noted:

> "For an officer to place a defendant in the back of the patrol car without looking in his pocket to see what he has and was only doing a cursory pat-down search, I think that officer may be asking for a short career."

Under the facts of defendant's case, Donaca's search was reasonable.

■ Having lawfully discovered the hashish, Donaca had probable cause to believe that defendant had committed the crime of unlawful possession of a controlled substance.

---

[3] The dissent's assertion that we have overruled *State v. Baker, supra,* is groundless. *Baker* involved neither a search for implements of escape nor an officer's testimony that he was looking for such items.

[4] To similar effect is *State v. Boyd,* 101 Or App 649, 792 P2d 462 (1990), in which the trial court justified a search of the defendant's shirt pocket on the basis of officer's safety. We held that the search was not done to insure officer safety, because "[the officer] testified that defendant was cooperative, and that she did not feel threatened." 101 Or App at 652.

Because he reasonably believed that the pack on defendant's bicycle might also contain hashish, he was justified in searching it incident to defendant's arrest for that crime. *State v. Caraher, supra,* 293 Or at 759.

Affirmed.

**BUTTLER, J.,** dissenting.

In *State v. Florance,* 270 Or 169, 527 P2d 1202 (1974), the court decided that, for the sake of simplicity, Article I, section 9, of the Oregon Constitution should be interpreted in the same way that the United States Supreme Court interpreted the Fourth Amendment to the United States Constitution. In that case, it adopted the rule enunciated in *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), relating to searches incident to arrest. The court held:

> "[U]nder the *Robinson* rule the items which may properly be seized upon the making of a search as an incident to a lawful custodial arrest include not only weapons and other articles which may be used to either threaten the life of the arresting officer or to effect an escape, and 'instrumentalities' of the crime for which the person was arrested and evidence of that crime, but also contraband evidence of other crimes." 270 Or at 185.

In *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982), the court overruled the holding in *State v. Florence, supra,* that the Oregon courts must follow the United States Supreme Court's rulings in search and seizure cases. The court said:

> "One of the protections derived from the Oregon Constitution includes a recognition that a valid custodial arrest does not alone give rise to a unique right to search." 293 Or at 756.

The court reiterated the Oregon rule in *State v. Owens,* 302 Or 196, 201, 729 P2d 524 (1986):

> "[The *Robinson*] federal rule permitted full searches of the person incident to any lawful custodial arrest, based upon the rationale that the right to search flowed automatically from a lawful custodial arrest because the arrest itself had so thoroughly involved the arrested person's privacy that further intrusions had no independent constitutional significance. Our decision in *Caraher* made it clear that, under the Oregon Constitution, the fact of arrest does not grant an unqualified right to search an arrestee's person for crime evidence."

If the present majority is correct, the Supreme Court accomplished nothing in *Caraher,* because the majority resurrects the rule laid down in *United States v. Robinson, supra,* by permitting a full search of an arrestee's person and all items immediately associated with his person incidental to an arrest. It would also overrule our very recent decisions in *State v. Baker,* 100 Or App 31, 784 P2d 446 (1989), and *State v. Boyd,* 101 Or App 649, 792 P2d 462 (1990), although it attempts, unsuccessfully, to distinguish them. 103 Or App at 118, n 4.

In denying defendant's motion to suppress, the trial court held that Donaca, incident to defendant's arrest, was entitled to "thoroughly search the defendant's person for items which could be used to harm the officer, or to aid the defendant in an escape" and, "upon discovering any item on the defendant's person, the officer was entitled to examine the item and to make a determination of whether the item could be used to cause harm to the officer or to aid the defendant in an escape." It justified the search of the pack on defendant's bicycle, either because defendant had consented and had not revoked his consent or because the search was incident to defendant's arrest for possession of hashish.

The trial court overstated the permissible scope of a search incident to arrest, apparently applying the federal law as Oregon courts had been applying it before *State v. Caraher, supra,* was decided. The majority agrees. It is clear from both *Caraher* and *Owens* that a search incident to arrest is limited to a search for evidence of the crime for which the person was arrested and to "a *pat-down* or *limited* search for *weapons* to protect the officer or to prevent escape * * *." *State v. Owens, supra,* 302 Or at 200. (Emphasis supplied.) That is to say that a pat-down or limited search is permissible for weapons that could be used against the officer or in effectuating an escape; that search is only for *weapons,* not for a handcuff key, a paper clip, a fish hook or a piece of wire.

If the trial court's and the majority's understanding of the rule is correct, the limits imposed by *Caraher* or *Owens* have no meaning, because any time that a person has been

arrested, the officer could make a full search of the person.[1] That rule was expressly rejected in *Caraher.* In fact, in order to search for crime evidence, the search must be limited to a search for evidence of a crime for which the arrestee is arrested and, as pointed out in *Owens,* if the person is arrested for a crime that ordinarily has neither instrumentalities nor fruits that reasonably could be concealed on the arrestee's person, no warrantless search for evidence of that crime would be authorized incident to that arrest. 302 Or at 200. In *Caraher,* the court approved the test applied in *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962), that a search incident to arrest must not only be close in time and space, but its intensity must be "commensurate both with the crime and what was known of the criminal[.]" 231 Or at 273.

Here, the officer did not even pretend that he was searching for evidence of the crime for which defendant was arrested, and there is no evidence that the search was necessary to prevent destruction of evidence. Neither is there evidence that the officer believed defendant to be armed or an escape threat or that the officer felt threatened. The officer's search, not only for weapons, but for any item that might aid defendant in picking the lock on the handcuffs is not within the permissible scope of a search incident to an arrest. The majority apparently believes that the scope of the search is extended automatically if, but only if, the officer states that he is looking for paper clips or fishhooks. *Compare State v. Jones,* 103 Or App 123, 796 P2d 670 (1990). That is an unusual talismanic quirk. To the contrary, under *Caraher* and *Owens,* Donaca was entitled to make a *limited pat-down* for weapons. However, he did not even feel the "small and lumpy" object in defendant's pocket during the pat-down, so he had no authority to reach into the pocket; when he did feel it after reaching inside the pocket, he did not say that he thought that it was a weapon. Accordingly, he had no authority to remove it. *State v. Baker, supra.* Evidence seized from defendant's person must be suppressed.

If that evidence had been lawfully obtained, the

---

[1] The search of the defendant's person in *Caraher* was not challenged; clearly, it was for evidence of the crime for which the defendant had been arrested. The dispute was over authority to search her purse, an item in her immediate possession, for evidence of that crime.

search of the pack on defendant's bicycle might have been justified, if Donaca had reasonably believed that it also contained hashish. *State v. Caraher, supra.* Because the first search was unlawful, the subsequent search cannot be justified as incident to defendant's arrest for possession of hashish.[2]

The question remains whether defendant's earlier "consent" survived the intervening events that resulted in his arrest pursuant to the two outstanding warrants. Passing the question of whether the officer, after making a valid stop of defendant for a traffic infraction[3] and obtaining his identification, which the officer did not question, had any authority to use the occasion to ask defendant's consent to search his small bike pack, there is no evidence that the consent was a continuing one. In response to the officer's question, defendant unzipped the pack, pulled out a poncho and a paper bag and then said, "See, that's it." That was the scope of both the consent and the search. Any further search by the officer, given the intervening events, required a new consent. None was requested or given, because Donaca justified that search as incident to defendant's arrest and for the officer's safety.

I would reverse and remand for a new trial. Accordingly, I dissent.

Joseph, C. J., and Warren and Newman, JJ., join in this dissent.

---

[2] Although defendant had not been arrested for possession of hashish, Donaca had probable cause to arrest him for that crime (were it not for the unlawful search) and, after searching the pack, advised defendant that he was under arrest for unlawful possession of drugs.

[3] ORS 810.410(3)(a) and (b) provide:

"(3) A police officer:

"(a) Shall not arrest a person for a traffic infraction.

"(b) May stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

Defendant does not contend that the officer did not have authority to ask his consent.