Argued and submitted October 27, 1989, reversed and remanded for new trial on
Counts 1 and 2 of indictment in case number 88CR-1524; otherwise affirmed
October 24, 1990

# STATE OF OREGON,
*Respondent, .*

*v.*

# DANIEL EDWARD ARNETT,
*Appellant.*

## (88CR-1524, 88CR-1707; CA A50650)

799 P2d 687

Ingrid A. MacFarlane, Salem, argued the cause for appellant. With her on the brief was Sally L. Avera, Acting Public Defender, Salem.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

In trial court case number 88CR-1524, defendant was convicted for manufacturing and possessing a controlled substance, first degree burglary, second degree theft; in trial court case number 88CR-1707, he was convicted for possession of a controlled substance. ORS 164.045; ORS 164.225; ORS 475.992(1) and (4). On appeal, he argues that the court erred in not granting a part of his motion to suppress evidence obtained in a search of his house[1] for evidence of the burglary, including evidence that was used to convict him of manufacturing and possessing a controlled substance. He also argues that the court erred in denying his motion for acquittal on the burglary charge. He further contends that the court erred in denying his motion to suppress evidence found in a second search, incident to his arrest for frequenting a place where controlled substances were used, because there was not probable cause to arrest him. Although he was not convicted of the frequenting charge, he was convicted of possession of a controlled substance on the basis of that evidence.

In July, 1988, Esta Keeney reported to the police that her house had been burglarized while she was on vacation and that a television, a VCR and a jewelry box were missing. She told the police that she suspected defendant, who lived across the street and who had watered her garden while she was gone. Officer King went to defendant's house, but he was not home, so he left a message for defendant to call him. Defendant went to the police station the next day. King told defendant about the burglary report and asked if he knew anything about it. Defendant said that he did not. King asked if he could search his house, and defendant replied, "I have no problem; I have nothing to hide." King told defendant that he was on his way to a call but would get back to him.

King soon discovered that he was not needed at the call and went immediately to defendant's house. On the way, he saw defendant and a friend on the street near defendant's home. King said that he would meet defendant at the house, and defendant agreed. When King arrived at the house, he

---

[1] The trial court denied the portion of the motion seeking suppression of evidence found in the bedroom closet and the attic of the house but granted the motion with respect to evidence seized in a search of other parts of the house and in a shed on defendant's property.

waited for defendant. Defendant's friend soon arrived and told King that defendant had gone in the back door of the house. King went to the back door and knocked. A small girl opened the door. From the open door, King could see into a bedroom where defendant was climbing down out of the top of a closet. A woman let King in, and he went to the bedroom where defendant was. He said to defendant, "Well, if you don't mind, I'll just start my search here in this bedroom." Defendant told him to go ahead. King looked in the closet and found a jewelry box on the floor. When King said that he was going to continue the search in the closet, defendant told him not to. The victim was brought to the house and identified the jewelry box as hers.

At that time, King informed defendant of his rights and arrested him for burglary. Defendant began to resist, so King called for assistance. Officer Pattingale arrived within five minutes, and defendant was handcuffed and seated in the dining room. The other people in the house left right after the arrest. King believed that he would find the stolen television and VCR in the top of the closet because he had seen defendant climb down from there. While Pattingale and defendant remained in the dining and living rooms, King shined a flashlight in the closet, saw a trap door in its ceiling, opened it and discovered marijuana plants.

Defendant argues that the trial court erred in refusing to suppress evidence found in the bedroom closet and attic of his home. The court found that defendant consented to the search of the bedroom until King found the jewelry box, after which he withdrew his consent. Defendant contends that he did not consent to any search. He argues that he did not agree at the police station to allow King to search his house that day but that he agreed to a search at a future date. He asserts that his agreement at the house to the search was not voluntary, but that he merely acquiesced to a show of authority by the police.

We conclude that defendant consented to a search of his house during his encounter with King at the police station. He did not limit the time of the search, nor did he request that a specific time be prearranged. When he later met King on the street and at his house, he again consented. We hold that defendant's consent was voluntary. There is no indication

that he was subjected to any express or implied coercion or that his free will was hampered. *State v. Kennedy,* 290 Or 493, 502, 624 P2d 99 (1981).

The trial court correctly found that defendant withdrew his consent after King discovered the jewelry box in the closet. Nonetheless, it held that the warrantless search of the attic was justified, because there was probable cause and exigent circumstances.[2] We agree that there was probable cause, but not that there were exigent circumstances.

■ To establish probable cause, under the Oregon Constitution, an officer must actually believe, on the basis of his training and experience and the facts known to him, that a crime has been committed and that evidence will be found in the place to be searched, and the belief must be reasonable under the circumstances. *State v. Owens,* 302 Or 196, 204, 729 P2d 524 (1986). King's belief that there was evidence in the attic was reasonable because Keeney had told him that she suspected defendant had committed the burglary, defendant had slipped in the back door knowing that King was waiting at the front door for him, King had seen defendant coming down from the top of the closet and he had found the jewelry box belonging to Keeney in the same closet.

■ Although there was probable cause for the search, there were not exigent circumstances. The theory underlying the exigent circumstances exception to the warrant requirements of Article I, section 9, and the Fourth Amendment is practical necessity. In some instances, the societal interest in a warrantless search or seizure outweighs the interest in requiring prior approval of such governmental action. The exception includes many diverse situations, such as when delay would present a risk that evidence would be destroyed or when there is a danger to the arresting officers or others. *State v. Peller,* 287 Or 255, 262, 598 P2d 684 (1979); *State v. Ritter,* 71 Or App 282, 692 P2d 158 (1984). We hold that, in this case, there was not sufficient evidence to show that the warrantless search was necessary. There was no indication that the objects might be hidden or destroyed while the officers were seeking a

[2] The trial judge concluded that the search was permissible, because other people were in the house. However, the court's finding that there were others in the house is not supported by the record, which shows that they left before the search of the attic.

search warrant. Defendant was handcuffed and was being guarded by an officer in another room, and the other occupants of the house had left.

■ The state contends that the search may also be justified as a search incident to arrest, which is permissible if it is reasonable in time, scope and intensity. *State v. Smith,* 103 Or App 113, 116, 796 P2d 665 (1990). As we noted in *Smith,* traditional reasons for permitting a search incident to arrest include protecting the arresting officer, depriving the arrested person of the means of escape and avoiding the destruction of evidence. 103 Or App at 117. Police may also search for evidence related to the crime for which a defendant is arrested that "reasonably could be concealed on the arrestee's person or in the belongings in his or her immediate possession at the time of the arrest." *State v. Owens, supra,* 302 Or at 200; *State v. Giffen,* 98 Or App 332, 778 P2d 1001 (1989).

■ We conclude, however, that there was no risk that evidence would be destroyed or that the officers were in danger. Further, the search exceeded the permissible scope of a search incident to an arrest for burglary. The evidence that King was searching for was a television and a VCR. To reach the attic he had to go through a closed trap door in the top of the closet. Defendant had left the closet before he consented to King's search of it. They had both left the bedroom area before King arrested defendant. The search occurred beyond the area in defendant's immediate control, and evidence of the marijuana plants found in the attic should have been suppressed. Thus, we reverse and remand on Counts 1 and 2 of trial court case number 88CR-1524.

■ Defendant also argues that there was insufficient evidence to support his conviction for first degree burglary, which was Count 5. He argues that there is no direct evidence to show that he entered the victim's house and took the property and that mere possession is not enough to support a burglary conviction. However, circumstantial evidence may support a conviction. *State v. Verdine,* 290 Or 553, 558-59, 624 P2d 580 (1981). We hold that there was sufficient evidence to support the conviction and that the trial court did not err in denying defendant's motion for acquittal.

■ In the second case that defendant appeals, which involved an unrelated incident, the police executed a search

warrant in a suspected drug house and searched for drugs, drug records, drug paraphernalia and the resident of the house, Shrum. When the police entered the house, they found Shrum, defendant and two others in the living room. Shrum immediately volunteered: "I'll get what you want; needles, baggies; that's all I have left." The police found narcotics paraphernalia throughout the house and also a "cutting room." Two of the officers noted that defendant was acting "hyper" and "flighty" and kept scratching and picking at himself and talking excitedly. His eyes were dilated and did not react to light. On the basis of their experience and training, they identified his behavior as that of a person who was under the influence of a drug, probably methamphetamine. Because of that, and the fact that they had found drugs in the premises, they arrested defendant for frequenting a place where controlled substances are used. They searched him incident to the arrest and found two plastic bags containing methamphetamine residue in his pocket.

Defendant argues that the court erred in denying his motion to suppress the fruits of that search, because the police lacked probable cause to arrest him for frequenting a place where controlled substances are used. ORS 167.222. Defendant argues that the police had no objective basis to believe that he frequented the place, because there was no evidence that he had gone to Schrum's residence on more than one occasion.

The statute, however, does not require that a person have been at a place more than once. ORS 167.222(1) provides:

> "A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475.005 to 475.285, 475.295 and 475.940 to 475.995."

A person commits the offense if he "remains" at the place. "Remain" has been interpreted to mean "simply to stay." *State v. Pyritz*, 90 Or App 601, 604-05, 752 P2d 1310 (1988).

We conclude that there was probable cause for the police to conclude that defendant was violating the statute.

*See State v. Anderson,* 95 Or App 178, 181, 768 P2d 427 (1989). The trial court did not err in denying the motion to suppress.

Reversed and remanded for a new trial on Counts 1 and 2 of indictment in case number 88CR-1524; otherwise affirmed.