Argued and submitted July 27, 1993, affirmed March 30, petition for review denied
June 14, 1994 (319 Or 211)

# STATE OF OREGON,
*Respondent,*

*v.*

# RICHARD WAYNE JACKSON,
*Appellant.*

## (8911-36230; CA A73962)

871 P2d 1019

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Riggs, Judge.*

DEITS, P. J.

---

* Riggs, J., *vice* Durham, J.

## DEITS, P. J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He argues that the trial court erred in denying his motion to suppress evidence seized from his shirt pocket. We affirm.

On September 2, 1989, Officer Sweeney stopped defendant for two traffic infractions: Failure to have a front license plate and failure to have a light on the rear license plate. Defendant got out of his car without being asked and told Sweeney that his license was suspended. He did not produce identification when requested, but he said that he might have some in his car. At that point, Sweeney intended to arrest defendant for driving while suspended and failure to display identification. As defendant turned to reach into his car, Sweeney noticed a knife sheath on his hip. Sweeney then frisked defendant, removed a dagger from the sheath and told defendant that he was under arrest.[1] He handcuffed defendant and continued his search. Sweeney saw plastic protruding from the top of defendant's bulging shirt pocket and, concerned that the pocket might contain a weapon or article of escape, removed the bulging item from the pocket. Sweeney did not suspect that the plastic, itself, was or contained a weapon or article of escape; rather, he suspected that it could be concealing such an item. The "bulge" turned out to be two clear plastic bags, each containing several bindles of cocaine.

Defendant moved to suppress the evidence seized,[2] on the ground that the search exceeded the scope of a lawful search incident to arrest. The motion was denied, and defendant was convicted on stipulated facts for possession of a controlled substance and felon in possession of a restricted weapon. ORS 475.992; ORS 166.270. Defendant appeals the possession conviction only and assigns as error the trial court's failure to suppress evidence of the cocaine seized from

---

[1] Defendant does not challenge the trial court's finding that defendant was under arrest before he reached into his car.

[2] The motion to suppress referred to "any and all evidence obtained as [a] result of the unlawful search." At the suppression hearing, defendant did not challenge the seizure of the dagger, but the trial court nonetheless found that the seizure of the dagger was authorized. Defendant does not challenge that finding.

his pocket, on the ground that the search of his pocket was overly intrusive.

█ Under Article I, section 9, of the Oregon Constitution, a "pat-down or limited search for weapons" to protect a police officer or prevent escape always is permissible incident to a person's arrest. *State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986); *State v. Caraher*, 293 Or 741, 759, 653 P2d 942 (1982). We have held, however, that such a search must be reasonable in time, scope and intensity in view of all the facts. *State v. Yoakum*, 104 Or App 291, 799 P2d 1150 (1990); *State v. Smith*, 103 Or App 113, 796 P2d 665 (1990), *rev dismissed* 312 Or 561 (1992). Whether a search for safety purposes or to prevent escape is so intrusive that it violates Article I, section 9, will thus depend on the particular circumstances.

█ Defendant first contends that the search of his pocket was unlawful, because an arresting officer must always conduct a preliminary pat-down before pursuing a more intrusive search incident to arrest. Although, in some circumstances, a search may be invalid absent a prior pat-down, a pat-down is not always a prerequisite to a search for officer safety conducted incident to an arrest. Defendant relies on our decision in *State v. Yoakum, supra,* in which a driver was arrested for failure to carry or present a driver's license. In that case, the officer did not do a pat-down, but immediately put his hand into the arrestee's jacket pocket, felt objects that he suspected to be crack cocaine and then removed the objects from the pocket to confirm his suspicions.

We agreed with the trial court that by reaching into the pocket without first patting it down, the officer exceeded the permissible scope of a search incident to arrest. That holding, however, was based on the fact that the officer did not express any safety concerns and on our conclusion that there was absolutely nothing about the defendant, the crime for which he was being arrested, or any other particular circumstances, that would cause the officer to have any safety concerns. We held that, under those circumstances, the search without a pat-down was overly intrusive. 104 Or App at 294; *see also State v. Baker*, 100 Or App 31, 784 P2d 446 (1989). *Yoakum*, however, does not stand for the proposition that any search incident to arrest conducted without a prior pat-down is *per se* unreasonable. Accordingly, the fact that

the search here occurred without a pat-down does not, by itself, mean that the search was unreasonable.

■     Defendant next argues that the circumstances here do not justify the intrusiveness of the search of defendant's pocket. He asserts:

"[A] search is not justified based on what the officer believes 'could' be within the area to be searched; rather, the search is justified only if the articulated reasons state an objective basis to conclude that the facts and circumstances surrounding this particular defendant justify a search for weapons or for items of escape."

■ ■     Defendant's position is that generalized concerns about safety may never justify a search for officer safety conducted incident to arrest. That is true of a safety search that is not conducted incident to arrest but rather during a lawful encounter with a citizen. In such circumstances, an officer must articulate particularized facts creating a reasonable suspicion that a person poses an immediate threat. *State v. Ehly*, 317 Or 66, 81, 854 P2d 421 (1993); *State v. Matthys*, 106 Or App 276, 282, 808 P2d 94, *rev den* 311 Or 433 (1991). In contrast, in searches incident to arrest, the officer need only articulate a reasonable concern for safety. *State v. Smith, supra*, 103 Or App at 117 n 2. Whether a generalized concern is reasonable will depend on all of the circumstances.

■     In *State v. Smith, supra*, we held that an officer is entitled to search an arrestee for weapons or tools that could aid in an escape. We concluded that the only limitation on that right was that the search must be reasonable in terms of time, scope and intensity. We explained:

"[O]ur holding does not grant an unqualified right to search an arrestee's person incidental to an arrest. Rather, it permits an officer to search for items with which an arrestee could escape only (a) when the officer articulates a concern about the possibility of escape and (b) the search is reasonable under all the circumstances." 103 Or App at 117 n 2.

We believe that the above analysis applies equally to searches for officer safety. Thus, an arresting officer may conduct a safety search for weapons when the officer articulates a reasonable concern for his or her safety and the search is reasonable under all the circumstances. As we said in *State v. Smith, supra*, this rule "achieves the proper balance between

an arrestee's right to be free from unreasonable intrusions into his privacy and an officer's right to protect his own safety and to prevent the arrestee's escape." 103 Or App at 117 n 2.

Here, the officer expressed both generalized concerns for his safety and defendant's potential escape as well as concerns specifically related to defendant. He testified that immediately after being stopped, defendant got out of his car without being asked. Sweeney explained that this caused him concern because most drivers stay in their cars during a traffic stop and that when a driver gets out of the car, as defendant did here, his perceived "threat level" goes up. He also testified that defendant's possession of the dagger caused him concern. He said that, based on his experience, a person who has a knife or a weapon often will have other weapons, such as a razor blade, or will have handcuff keys.

The evidence also shows that the search of defendant's pocket was reasonable under the circumstances. Sweeney testified that when he observed a bulky item in defendant's pocket, he believed it might have been concealing a weapon or escape device. As we said in *State v. Jones*, 103 Or App 123, 126, 796 P2d 670 (1990), *rev den* 311 Or 166 (1991), "an officer is not required to conduct a safety search by Braille." Accordingly, Sweeney was not required to conduct his search of the pocket by feeling around the bulky object. It was reasonable for Sweeney to remove the object from defendant's pocket.

Despite defendant's arguments to the contrary, the facts of this case are distinguishable from those in *State v. Boyd*, 101 Or App 649, 792 P2d 462 (1990), where we held that, under the circumstances there, the search of the arrestee's pocket was not reasonable to ensure officer safety. In that case, the defendant was stopped for a traffic violation and subsequently arrested for driving while suspended. Although the arresting officer did not feel threatened, she patted down the defendant and, while doing so, noticed a folding bladed knife in a sheath on his belt. She did not remove the knife. She did, however, remove a metal container from the defendant's pocket even though, after feeling the container in the pat-down, she thought that it was only a "chew snuff box" and, again, she was not concerned for her safety. When she returned the item to the pocket, she felt a

folded paper packet that later proved to contain cocaine. In contrast, here, Sweeney articulated concerns about his safety and defendant's possible escape and specifically identified the types of devices that he was attempting to find.

We conclude that, under the circumstances, it was reasonable for Sweeney to remove the plastic from defendant's bulging pocket to determine what was causing the pocket to bulge and to ensure that the pocket did not contain a weapon or article of escape. The trial court did not err in denying defendant's motion to suppress.

Affirmed.