Argued and submitted March 24, reversed and remanded November 4, 1998

# STATE OF OREGON,
## *Appellant,*

*v.*

# STEVEN MICHAEL SUTER,
## *Respondent.*

## (96-1052; CA A95862)

969 P2d 1035

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Mary M. Reese, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Riggs, J., resigned.

**LANDAU, P. J.**

The state appeals an order suppressing evidence gathered when an officer asked to see the contents of defendant's fanny pack during the course of a traffic stop. The trial court held that the officer lacked justification for expanding the scope of the stop to include questioning about the contents of the pack. The state contends that the trial court erred, because the officer had reason to believe that the pack could have contained a weapon. In the alternative, the state contends that, even if the officer lacked a basis for expanding the scope of the investigation, the evidence that was discovered during the stop is admissible under ORS 136.432, enacted after the entry of the suppression order. We conclude that, although the trial court was correct that the officer lacked justification to expand the scope of the traffic stop to include questioning about defendant's fanny pack, the evidence obtained as a result of that questioning is admissible under the subsequently enacted statute.

The relevant facts are not in dispute. Officer Broomfield observed defendant drive at a high rate of speed through a residential area and make several unsignaled turns. Broomfield followed defendant's car until it stopped in front of a known drug house, at which point he parked his car about 10 feet behind defendant's. As he approached defendant's car, Broomfield noticed that another man was a passenger in defendant's car. Broomfield asked for defendant's driver's license and proof of insurance. While Broomfield conducted a records check, Officer Freshner arrived at the scene. Freshner observed the passenger make "some kind of movement" that concerned him. Freshner also observed in the car a pipe that he recognized as the type commonly used to smoke marijuana. He asked defendant, "What's up with the pot pipe?" Defendant handed him the pipe. Broomfield, seeing the pipe, asked defendant, "Where's the dope that goes with this?" Defendant reached into the console and handed Broomfield a small plastic bag that contained less than an ounce of marijuana.

At that point, Freshner noticed that defendant had a fanny pack wedged between his back and the seat of the car.

Freshner asked defendant what was in the pack, and defendant replied, "Nothing." Freshner knew that fanny packs sometimes are used to conceal weapons, and, because defendant had stopped his car in the vicinity of a known drug house, he concluded that defendant probably was carrying a weapon in the pack. Freshner asked defendant to show him what was inside the pack, and defendant produced the pack, unzipped it, and began to thumb through the contents. Freshner saw in the pack the barrel of a hand gun. He yelled, "Gun!" and drew his own weapon, as did Broomfield. Defendant and the passenger were removed from the car, handcuffed, and placed in separate patrol cars. Freshner went back to the car and searched the contents of the fanny pack, finding, among other things, a gun and a small bag of methamphetamine. Throughout the course of the stop, both defendant and the passenger were polite and cooperative.

Defendant was charged with possession of a controlled substance, ORS 475.992(4)(b), and unlawful possession of a firearm, ORS 166.250. Before trial, defendant moved to suppress all evidence obtained as a result of Freshner's questioning about the fanny pack. Defendant argued that Freshner lacked any justification for expanding the scope of the traffic stop to an investigation of the contents of defendant's fanny pack. The state argued that Freshner's questioning about the pack was justified by his reasonable concern for his safety in light of the possibility that the pack contained a weapon.

The trial court granted defendant's motion. The court found that defendant had made no furtive gestures and that neither the fact that the car was stopped in front of a known drug house nor the fact that defendant had been found in possession of less than an ounce of marijuana provided justification to search the pack.

On appeal, the state argues that Freshner's concerns for his safety justified his questions about the contents of the pack. According to the state, the fact that Freshner suspected that the bag contained a weapon, by itself, entitled him to inquire about its contents. Defendant argues that concerns for officer safety may justify expanding the scope of a traffic stop only when the investigating officer develops reason to

believe that the defendant presents an immediate threat; in this case, defendant contends, Freshner had no reason to believe that such an immediate threat existed.

ORS 810.410 limits an officer's questioning during a traffic stop to matters "reasonably related to the traffic infraction, identification and issuance of [a] citation." ORS 810.410(3)(b). An officer may expand the scope of the investigation beyond those enumerated subjects only when the investigating officer can point to some basis other than the traffic infraction. *State v. Dominguez-Martinez*, 321 Or 206, 212, 895 P2d 306 (1995). One such basis for expanding the scope of investigation during a traffic stop is the officer's reasonable suspicion that the defendant poses an immediate threat to the officer's safety. *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). The "officer safety" justification applies, however, only when the officer articulates particularized facts to justify a reasonable fear of immediate threat of physical injury. *State v. Jackson*, 127 Or App 170, 174, 871 P2d 1019, *rev den* 319 Or 211 (1994).

On point in that regard is our decision in *State v. Knox*, 134 Or App 154, 894 P2d 1185 (1995).[1] In that case, the defendant was stopped for a traffic infraction. The investigating officer recognized the defendant as someone who had been investigated previously for delivery of controlled substances and who had a reputation for carrying weapons. The officer asked the defendant to step out of the vehicle, questioned the defendant about whether he possessed any weapons, searched the vehicle for weapons, and found, among other things, an unlawful firecracker. We held that the evidence of the firecracker should have been suppressed. We rejected the state's contention that the expansion of the investigation was justified by officer safety concerns because of the defendant's possible access to concealed weapons. We concluded that mere access to weapons, by itself, did not give rise to a reasonable suspicion that the defendant posed an immediate threat of using them. *Id.* at 160.

---

[1] Our decision in *Knox* was vacated and remanded for reconsideration on an unrelated issue. *State v. Knox*, 327 Or 97, 957 P2d 1209 (1998). To the extent that the vacation has any effect on the vitality of the decision with respect to the officer safety issue, we reiterate our adherence to that portion of our decision.

■    There is even less of a basis for suspecting an immediate threat in this case. Defendant was at all times polite and cooperative. Neither Broomfield nor Freshner testified that, before they actually saw defendant's handgun, they believed that defendant posed an immediate threat to them or to anyone else, only that the fanny pack could have contained a weapon. That is insufficient to justify an expansion of a traffic stop investigation beyond the infractions for which defendant was stopped.

The state argues that, even if the investigation was impermissible, the evidence that it produced still is admissible under ORS 136.432, which provides:

> "A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by
>
> "(1)   The United States Constitution or the Oregon Constitution;
>
> "(2)   The rules of evidence governing privileges and the admission of hearsay; or
>
> "(3)   The rights of the press."

The state notes that, although the statute was enacted after the entry of the trial court's suppression order, it was expressly made applicable to pending criminal proceedings as of December 5, 1996, and thus applies to this still-pending action. Defendant contends that the statute does not require admission of the evidence because the statute is unconstitutional and because, in any event, suppression is constitutionally required.

We begin with defendant's contentions with respect to the constitutionality of ORS 136.432. Defendant first contends that the statute is unconstitutional because it was enacted as part of a bill that contained more than one subject, in violation of Article IV, section 20, of the Oregon Constitution. In making that argument, defendant reiterates precisely the same argument that we addressed and rejected in *State v. Fugate*, 154 Or App 643, 651-59, 963 P2d 686 (1998). We adhere to our decision in that case without further discussion.

Defendant also contends that ORS 136.432 is unconstitutional for reasons set forth in the briefing in *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998); *State v. Cleveland*, SC S41302; and *State v. Fleetwood*, SC S41311. Defendant, however, fails to identify which of the many arguments asserted in those cases he intends to assert in this case. We reject those arguments as not properly raised. *Fugate*, 154 Or App at 648.

■     That leaves defendant's contention that, even if the statute applies, it requires suppression of the evidence, because Freshner's request that defendant let him look in the fanny pack amounted to an unconstitutional search. The trial court did not reach that issue, having disposed of defendant's motion on nonconstitutional grounds. On remand, the trial court will have the opportunity to address defendant's constitutional arguments.

Reversed and remanded.