Argued and submitted May 31, affirmed August 15, 2001

# STATE OF OREGON,
*Respondent,*

*v.*

# JOE WARREN SOPIWNIK,
*Appellant.*

## C983712CR; A106504

30 P3d 430

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender.

David J. Amesbury, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Ceniceros, Senior Judge.

BREWER, J.

**BREWER, J.**

In this appeal from convictions for delivery of a controlled substance, ORS 475.992(1), and possession of a controlled substance, ORS 475.992(4), defendant argues that the trial court erred when it denied his motion to suppress evidence of methamphetamine discovered inside his jacket pocket by the arresting officer. The state contends that the officer's search of the pocket was a valid search incident to arrest. We review the trial court's legal conclusions for errors of law, and we are bound by its factual findings if there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). We affirm.

The following facts are undisputed. On October 18, 1998, defendant committed two traffic infractions while driving a car at a high rate of speed. Deputy Schuster initiated a traffic stop as defendant pulled into a convenience store parking lot. Upon parking, defendant rapidly got out of his vehicle. He also appeared to be nervous. Schuster got out of his patrol car and quickly approached defendant. Defendant was wearing a denim jacket with two breast pockets and two hip pockets. Defendant told Schuster his name, his date of birth, and that he did not have a driver's license. Defendant fidgeted, moved his hands, and did not make eye contact with Schuster.

Schuster contacted his dispatcher, who informed him that defendant's driver's license was suspended and that defendant was on probation for theft. The dispatcher also advised Schuster that defendant had been convicted of unauthorized use of a motor vehicle.

Schuster testified that he becomes concerned for his safety when "somebody bails out of the car," because such behavior indicates that the person intends to fight or flee. Schuster also testified that he believes that a person is a flight risk, or may become confrontational, when the person is fidgety and does not make eye contact and that, in his experience, people involved with theft crimes—as was defendant—ordinarily also are involved with drugs and often have weapons. He was particularly concerned about the possibility that defendant might have small weapons such as razor

blades, needles, or knives, or that he might have a handcuff key or some other small tool that could be used to pick the handcuff lock. Based on those concerns, Schuster called for assistance, and Deputy Berquist responded to the scene.

After calling for backup, Schuster arrested defendant for driving while revoked.[1] Schuster handcuffed defendant, spread defendant's legs, and asked him if he had any weapons, drugs, or large sums of money. Defendant responded that he did not. Defendant's hands were sweaty during the arrest, and Schuster testified that defendant would not stand still.

Schuster then began a "search incident to arrest." He explained the procedure as follows:

> "[W]hat I do is I go through the pockets. I check—I pat the outside, and then I go actually into the pockets because I don't want to miss anything. I don't want to bring a weapon into the jail. I don't want to have him have access to a weapon while he is in the back seat of my patrol car, that is going to hurt me."

Schuster testified that he follows this procedure every time he makes an arrest. Schuster did not detect anything in defendant's pockets during the pat-down of the exterior of defendant's clothing, but, as he was going through defendant's jacket pockets, Schuster discovered a clear, plastic bag containing 1.3 grams of a substance later identified as methamphetamine.[2] Because the jacket was denim, Schuster testified that he would not have discovered small objects in its pockets using only an external pat-down.

Before trial, defendant moved to suppress the methamphetamine discovered in his jacket. He asserted that the search of the interior of his pockets violated his rights under Article I, section 9, of the Oregon Constitution.[3] He argued

---

[1] Defendant does not appeal his conviction for driving while revoked.

[2] The record reflects that 1.3 grams is about the weight of a packet of sugar.

[3] Article I, section 9, of the Oregon Constitution, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

that the deputy lacked reasonable suspicion to reach inside his pockets after an external pat-down of his clothing did not reveal anything inside the pockets. The state responded that the search was conducted incident to arrest and to protect the safety of the officer and, thus, no warrant was required.

The trial court denied defendant's motion:

"Certainly there is no problem with the pat-down. The question becomes that when the pat-down shows nothing * * *, 'Does [the officer] get to look in [defendant's pocket?]' I think under the cases, * * * he does, where an officer can articulate facts from which a reasonable police officer would infer that escape and/or violence * * * is a concern[. A] search designed to find those things that would be helpful in an escape within reasonable ends or means * * * doesn't become unreasonable * * *.

"* * * [H]ere we are talking about a jacket pocket, and it is a jacket pocket where small items such as a key or a paper clip * * * or a razorblade or similar small object could well be in that pocket and not be felt. * * *

"I am going to hold under the facts the officer testified to here * * *. Under these circumstances, I think this officer was, in fact, allowed by the Constitutions of the United States and the State of Oregon to search with his hand inside the pocket * * *. Hence, I will deny the motion to suppress."

Defendant was convicted after a jury trial.

On appeal, defendant argues that the trial court erred in denying his motion to suppress the methamphetamine evidence. He argues that a search incident to arrest is reasonable only if it is based on specific and articulable facts demonstrating that the arrestee poses a serious threat of harm or escape and that a search would decrease the threat. Defendant contends that Schuster could not have relied upon specific and articulable facts because he testified that he searches *all suspects* similarly; therefore, he could not have held a subjective belief that *defendant* posed a threat of harm or escape. Finally, defendant argues that the facts known to the officer did not provide an objective basis for reasonable suspicion. The state responds that the warrantless search of defendant's pockets was reasonable as a search incident to

arrest. The state asserts that, regardless of his regular practices, Schuster reasonably believed that defendant was a threat to his safety or to escape.

■■■■ A warrantless search or seizure is presumptively unreasonable unless it satisfies at least one of the recognized exceptions to the warrant requirement. *State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994). Under the Oregon Constitution, a valid custodial arrest does not by itself authorize a search. *State v. Caraher*, 293 Or 741, 757-60, 653 P2d 942 (1982). A warrantless search must be justified by the circumstances surrounding the arrest. *Id.* "Under Article I, section 9, there are three valid justifications for a search incident to lawful arrest: to protect the officer's safety, to prevent the destruction of evidence, and to discover evidence relevant to the crime for which the defendant was arrested."[4] *State v. Hoskinson*, 320 Or 83, 86, 879 P2d 180 (1994). Reasonable steps taken to prevent a detainee from escaping or from harming others in the area may fall within the officer-safety justification. *See State v. Owens*, 302 Or 196, 200, 729 P2d 524 (1986) (including prevention of escape within the officer-safety justification); *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987) (including the protection of "others then present" within the officer-safety justification). An initial pat-down of the exterior of the clothing of a person in custody is always justified to protect the officer's safety. *Owens*, 302 Or at 200. However, beyond that limited pat-down,

> "a further search incident to arrest conducted to protect officer safety or to prevent escape must be reasonable, taking into account all the facts surrounding the arrest. Thus, an officer may conduct a further protective search if he or she develops a reasonable suspicion, based on specific and articulable facts, that the person in custody poses a serious threat of harm or escape and that a search would lessen or eliminate that threat." *Hoskinson*, 320 Or at 87 (citation omitted).

*See also State ex rel Juv. Dept. v. Singh*, 151 Or App 223, 228, 949 P2d 303 (1997) ("[T]he initial *Owens* pat-down does not extend to a search of the interior of an arrestee's pockets,

---

[4] The state does not contend that this search was justified on any ground other than officer safety.

unless that search can be justified as an expanded search incident to arrest.").

In *Hoskinson*, the officer conducted a valid pat-down search after arresting the defendant for driving while suspended. 320 Or at 85. During the search, the officer removed a wallet from the defendant's back pocket. *Id.* The officer opened the wallet and discovered methamphetamine. *Id.* At the suppression hearing, the officer testified that it was his "normal practice" to remove and open arrestees' wallets. *Id.* "[T]he officer testified affirmatively that he had *no* specific reason to believe that [the] defendant's wallet contained either a weapon or a means of escape. He testified that his training and experience led him to believe that the wallet *could have* contained one of the items, but that he could not tell until he opened the wallet." *Id.* at 88 (emphasis in original). Without a more specific rationale for the search, the Supreme Court held that "[t]here is nothing to suggest that the officer had a *reasonable* suspicion that [the] defendant posed an immediate threat of escape or harm." *Id.* (emphasis in original).

■      Here, defendant argues that, because Schuster's normal practice also was to search the interior of all arrestees' pockets incident to arrest, the search of defendant's pockets was "predestined as soon as he was arrested." Defendant reasons that, as in *Hoskinson*, the search could not have been based on "specific and articulable facts supporting a reasonable suspicion that defendant presented a threat." We disagree. In *Hoskinson*, the court held merely that an officer's "normal practice" is not, by itself, sufficient to invoke the officer-safety justification. Thus, the fact that Schuster reaches into the pockets of everyone he arrests did not necessarily make his decision to search the interior of *this defendant's* pockets unreasonable. The decisive questions are whether, irrespective of his normal practice, Schuster believed that defendant posed a threat to officer safety and whether such a belief was reasonable. The following evidence, which the trial court found credible, established such a reasonable belief.

Schuster observed defendant drive at a high rate of speed and commit two traffic infractions in a short period of time. Defendant got out of his car rapidly after being stopped,

which caused the officer concern. *See State v. Jackson*, 127 Or App 170, 175, 871 P2d 1019, *rev den* 319 Or 211 (1994) (leaving car immediately after being stopped, without being asked, may give rise to a reasonable safety concern for an arresting officer). Defendant appeared nervous and fidgety and would not make eye contact with Schuster during the encounter. *See State v. Blevins*, 142 Or App 237, 245, 920 P2d 1131 (1996), *rev den* 327 Or 521 (1998) (noting that an arrestee who "appeared nervous" and kept "looking around and sweating" gave rise to a reasonable officer-safety concern); *State v. Starkweather*, 98 Or App 7, 10, 777 P2d 418 (1989) (noting that an arrestee who seemed "nervous and excited from the moment he was stopped" gave rise to a reasonable officer-safety concern).

Schuster knew that defendant had been involved with stolen property, and, from his training and experience, he knew that people involved with stolen property often also possess drugs or weapons. Defendant's actions caused Schuster to be concerned that defendant had either a weapon or handcuff key and that he might attempt to flee. Schuster was particularly concerned for his safety because the type of weapon or device he suspected defendant of possessing was small and would not have been easily located by an external pat-down. Finally, the thick fabric of defendant's jacket made it difficult for Schuster to determine—from an external pat-down—what might be in the jacket pockets. *See State v. Smith*, 103 Or App 113, 118, 796 P2d 665 (1990), *rev dismissed* 312 Or 561 (1992) (holding that a search for a small weapon inside the defendant's pants pocket was a reasonable officer-safety precaution when the pants were made of heavy material). Those circumstances, coupled with Schuster's training and experience, gave rise to a reasonable belief that defendant posed a risk to officer safety.

Accordingly, the officer's search of the interior of defendant's jacket pocket was reasonable and did not violate defendant's rights under Article I, section 9, of the Oregon Constitution.

Affirmed.