Argued and submitted November 1, 2005, decision of Court of Appeals
and judgment of circuit court affirmed April 13, reconsideration denied
May 23, 2006

## Lon Thurston MABON,
*Petitioner on Review,*

*v.*

## Janice R. WILSON,
*Respondent on Review.*

## (CC 0212-12568; CA A121483; SC S52348)

133 P3d 899

Lon Thurston Mabon, *in propria persona*, argued the cause and filed the brief for himself.

Mary H. Williams, Solicitor General, Salem, argued the cause for respondent on review.

Before Gillette, Presiding Justice, and Durham, Riggs, De Muniz,\*\* Balmer, and Kistler, Justices.\*\*\*

GILLETTE, J.

---

\*\*  Chief Justice when decision was issued.

\*\*\* Wallace P. Carson, Jr., Chief Justice when the case was argued, did not participate in the consideration or decision of this case.

**GILLETTE, J.**

This is a case in the nature of *quo warranto* brought under ORS 30.510, set out *post*, in which plaintiff Mabon challenges the right of defendant Wilson to sit as a judge of the Circuit Court for Multnomah County. The case was heard by another judge of that court, who dismissed it on the merits for failure to state a claim. The Court of Appeals, in a wide-ranging opinion, affirmed the judgment of the trial court, but on the ground that the trial court had no jurisdiction to try the matter because, under ORS 30.510, only the Multnomah County District Attorney could initiate such a case, and he had not done so. *Mabon v. Wilson*, 198 Or App 340, 108 P3d 598 (2005). We allowed Mabon's petition for review and, for the reasons that follow, now affirm the decision of the Court of Appeals.

Mabon's theory on the merits is that Wilson is not qualified to sit as a circuit court judge because she has not taken the oath required of persons who would hold that office. We therefore begin by setting out the relevant oaths. The oaths of office that Supreme Court and circuit court judges must take in Oregon are virtually identical. The oath that each Supreme Court judge must take is provided for by Article VII (Amended), section 7, of the Oregon Constitution, which states:

> "Every judge of the supreme court, before entering upon the duties of his office, shall take and subscribe, and transmit to the secretary of state, the following oath:

> " 'I, _____, do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of Oregon, and that I will faithfully, and impartially discharge the duties of a judge of the supreme court of this state, according to the best of my ability, and that I will not accept any other office, except judicial offices, during the term for which I have been elected.' "

The oath taken by circuit court judges is prescribed by Article VII (Original), section 10, of the Oregon Constitution, which provides that "* * * Circuit Judges * * * shall take the same

oath as the Supreme Judges." The oath to which Judge Wilson subscribed states:

> "I, Janice R. Wilson, do solemnly swear (or affirm) that I will support the constitution of the United States, and the constitution of the State of Oregon, and that I will faithfully and impartially discharge the duties of a judge of the circuit court of this state, according to the best of my ability, and that I will not accept any other office, except judicial offices, during the term for which I have been elected."

This case is one in a series of disputes in which Mabon has challenged the right of sitting judges to hold their offices on the ground that those judges have not taken and subscribed to the "required, qualified, original, identical, exact, true, correct, certain, and complete Oath as required by the Oregon Constitution * * *." (Mabon's words.)[1] Mabon purported to commence the action under ORS 30.510, set out *post*, a statute that, *inter alia*, provides a judicial mechanism by which to challenge the right of a person to hold a particular public office. Wilson filed a motion to dismiss for failure to state a claim, asserting that the oath that she had taken met all legal requirements. The trial court agreed and dismissed the case.

Mabon filed a timely notice of appeal from the circuit court judgment in the Court of Appeals. After he had filed his opening brief in that court, counsel for Wilson moved to dismiss the appeal on the ground that the Court of Appeals lacked jurisdiction because the case had not been initiated in the circuit court by the district attorney. Mabon requested a stay while he attempted to obtain the district attorney's participation. The Court of Appeals, however, denied Mabon's motion for a stay and dismissed the appeal.

Mabon petitioned for reconsideration. The Court of Appeals denied reconsideration but also, on its own motion, reinstated the appeal. The court took that action because it recognized that it always has jurisdiction to determine whether the trial court from which an appeal is taken itself had jurisdiction. *Mabon*, 198 Or App at 343. As noted, the

---

[1] Mabon's challenge to the adequacy of the oath that Judge Wilson took is set out more fully in *Mabon v. Wilson*, 198 Or App 340, 342 n 1, 108 P3d 598 (2005).

court then went on to reach the jurisdictional question on its merits and to hold that the district attorney's participation in the type of case that Mabon wished to prosecute was mandatory. *Id.* at 357. We then allowed Mabon's petition for review.

■     As noted, Mabon attempted to utilize the procedure set out in ORS 30.510 in bringing this action. That statute is a statutory substitute for the common-law writ of *quo warranto*. It provides, in part:

> "An action at law may be maintained in the name of the state, *upon the information of the district attorney, or upon the relation of a private party against the person offending*, in the following cases:

> "(1) When any person usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise within this state, or any office in a corporation either public or private, created or formed by or under the authority of this state[.]"

(Emphasis added.)

■     The answer in this case turns on the interpretation of the meaning and scope of the two emphasized clauses in ORS 30.510. Those clauses state that an action may be maintained "upon the information of the district attorney, or upon the relation of a private party." The first clause makes it appear that only the district attorney may bring a proceeding under ORS 30.510 and that, as a consequence, Mabon's case properly was dismissed. However, the second clause casts doubt on the foregoing interpretation because of its reference to such actions being brought "on the relation of a private party." Mabon is a private party; does the second clause authorize him to bring the present action? That is a question of statutory interpretation that, at least initially, requires examination of the words of the statute, the context in which those words appear (including the history of the evolution of the statutory wording over time), and the case law construing those words. *See generally PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (describing template for construing statutes); *see also State v. Perry*, 336 Or 49, 55, 77 P3d 313 (2003) (noting that historical background of statutes provides further context).

In addition to the express words of ORS 30.510, quoted above, we find two contextual statutes, ORS 30.530 and ORS 30.610, that aid our analysis. We set out those statutes here, in order to facilitate our examination of the text of ORS 30.510(1).

ORS 30.530 provides:

"Whenever an action is brought against a person for any of the causes specified in ORS 30.510(1), *the district attorney, in addition to the statement of the cause of action, may separately set forth in the complaint the name of the person rightfully entitled to the office* or franchise, with a statement of the facts constituting the right of the person thereto. In such case, judgment may be given upon the right of the defendant, and also upon the right of the person so alleged to be entitled, or only upon the right of the defendant, as justice may require."

(Emphasis added.) ORS 30.610 provides, in part:

*"The action[ ] provided for in ORS 30.510 * * * shall be commenced and prosecuted by the district attorney of the district* where the same [is] triable. When the action is upon the relation of a private party, as allowed in ORS 30.510, the pleadings on behalf of the state shall be signed by the relator as if the relator were the plaintiff[;] * * * in all other cases the pleadings shall be signed by the district attorney[.] * * * When an action is commenced on the information of a private person, as allowed in ORS 30.510, having an interest in the question, such person, for all the purposes of the action, * * * shall be deemed a coplaintiff with the state."

In our view, the contextual clues provided by the words of those statutes point in the same direction. First of all, ORS 30.530 makes it clear that the district attorney has control over the proceedings brought under ORS 30.510, even to the extent of being entitled to name the person whom the district attorney believes should be granted the office presently held by the defendant. There is no suggestion that the legislature intended to give any private party a similar right to advocate for a claimant to the office or any voice in determining whether the district attorney should or should not address the issue.

Second, we find the directive in ORS 30.610 that all actions of the kind involved in this case "shall be commenced and prosecuted by the district attorney" to be a strong indicator that it is the district attorney who must bring such proceedings. The statute also provides us with a hint as to the role that may be played by an interested private party:

"When an action is commenced on the information of a private person, as allowed in ORS 30.510, having an interest in the question, such person, for all the purposes of the action, * * * shall be deemed a coplaintiff with the state."

That wording indicates that the district attorney's participation cannot be dispensed with; instead, the private party only may participate with the district attorney, as a "coplaintiff."

We find no contextual statutory wording that points in the opposite direction.

In summary, and in spite of the ambiguity of ORS 30.510 when one considers certain of the words of that statute in isolation, we are satisfied that the statutory scheme as a whole contemplates that the district attorney must participate in cases like the present one. That said, we nonetheless look to the history of the statute to determine whether that history undercuts in any way our preliminary assessment of the meaning of the wording of ORS 30.510. And, finally, we examine the case law decided under ORS 30.510 and its predecessors, in order to determine whether this court in the past has interpreted the statute in some other way.

We turn first to the statutory history. ORS 30.510 and its contextual statutes are a statutory substitute for the ancient writ of *quo warranto* ("by what warrant?") under which, since at least the thirteenth century, English kings could inquire as to the right of their subjects to hold and exercise certain profitable franchises. *See, e.g.*, Sir Frederick Pollock and Frederic William Maitland, I *The History of English Law* 572 (2nd ed 1898) (describing use of writ by Edward I to rein in what he perceived to be abuses of seignorial authority). The writ never has been used in its common-law form in Oregon, however. Instead, the territorial legislature enacted a statutory version of the writ, together with directions as to

who could seek to utilize it, in 1853. That statute provided, in part:

> "An action may be brought *by the prosecuting attorney* of the district, in the name of the territory, upon his own information, or upon the complaint of a private party against the party offending, in the following cases:
>
> "1. When any person shall usurp, intrude into, or unlawfully hold or exercise any public office, civil or military, or any franchise within this territory, or any office in a corporation created by the authority of this territory."

An Act Regulating Proceedings to Vacate Charters and Letters Patent and to Prevent the Usurpation of an Office or Franchise, ch I, § 5 (1854), in *The Statutes of Oregon Enacted and Continued in Force by the Legislative Assembly, at the Session Commencing 5th December 1853* 140 (1854) (emphasis added).

Except for the reordering of certain phrases and the substitution of the title "district attorney" for "prosecuting attorney," the statute's words (and the wording of the predecessors to ORS 30.530 and ORS 30.610) remain essentially the same as they were in 1853. Certainly, there is no basis in the few adjustments that have been made to the wording for concluding that the statutes have any meaning substantially different from the meaning that they had in 1853. *See Mabon*, 198 Or App at 354-56 (stating that law unchanged in its essentials from first version to version presently in force and providing illustrations). In sum, we find nothing in the history of the statutes that alters our preliminary assessment of their scope and impact on the issue presented by this case. We turn to the case law.

The case law respecting ORS 30.510 and its contextual statutes, both in their present and earlier forms, is extensive. Fortunately, however, we are not the first to look down this road, and the effort made by others makes it possible for us to shorten the trip. The Court of Appeals, in its extensive and admirable effort in this case, undertook a survey of what it characterized as the "over 140 years of muddled case law" surrounding ORS 30.510 and its predecessor statutes. *See Mabon*, 198 Or App at 347-54 (reporting survey). We shall not attempt to reproduce that extended survey

here; we simply note that it is exhaustive and interesting, and we commend the Court of Appeals for it. More importantly, we agree with that court that, although the case law contains a number of cases in which it does not appear that the district attorney participated (but nothing was made of the absence), only two cases actually discussed the requirement of district attorney participation. We turn to those cases.

The first of those cases was *State ex rel. v. Cook*, 39 Or 377, 65 P 89 (1901). In *Cook*, a private relator brought an action under the predecessor of ORS 30.510 in which he asserted that he, and not the current holder of the position, was entitled to be the Morrow County road supervisor. The defendant demurred on the ground, *inter alia*, that the district attorney had not initiated the action. The district attorney then attempted to cure that defect by "[having] his appearance noted upon the journal, showing not only that the prosecution was being carried on with his express assent and approval, but that the case had been so commenced." *Id.* at 378. But that belated endorsement was insufficient, in the court's view, to satisfy the statute. The court stated:

> "The legislative intendment, as gathered from [the statutory predecessors to ORS 30.510, 30.530, and 30.610] * * * would seem to be that, whether the purpose of the action be to oust the intruder only, or to go further, and to instate the person entitled to the office, the action should be brought in the name of the state, either upon the information of the prosecuting attorney of the district where it is triable, or on the relation of a private party. *In either case, it is made the duty of the prosecuting attorney to commence and prosecute the action.* * * * The prosecuting attorney himself must set it in motion, and be responsible for its conduct and prosecution; and in doing this he could not do less than to sign the complaint in his official capacity."

*Id.* at 381-82 (citation omitted; emphasis added). The court went on to hold that failure of the district attorney to be involved from the outset was fatal to the case, so that a judgment in favor of the private relator had to be reversed. *Id.* at 382-83.

The second case was *In re State v. Millis*, 61 Or 245, 119 P 763 (1912). That case was an action, brought by the

Attorney General and certain private parties, seeking to oust the defendants from their asserted positions as directors of a railroad. Defendants demurred to the complaint on the ground that it had not been commenced by the appropriate prosecuting attorney. The trial court agreed, sustained the demurrer, and dismissed the case. On appeal, the Supreme Court affirmed the dismissal, holding that not even the Attorney General could exercise the power conferred on prosecuting attorneys by the predecessors to ORS 30.510, ORS 30.530, and ORS 30.610. *Millis*, 61 Or at 252, 254.

■    The Court of Appeals, at the conclusion of its own survey of the case law, made the following observation:

> "In sum, having reviewed the prior judicial constructions of ORS 30.510 and ORS 30.610 and their predecessors, we are persuaded that the rule of *Cook* and *Millis* survives, notwithstanding the occasional case that appears to lack the involvement of the district attorney. In those cases, no matter the reason the court in fact heard the case, the court never overruled *Cook* and *Millis*."

*Mabon*, 198 Or App at 354. We agree with that summary. And, when that summary is combined with the apparent import of the words of ORS 30.510, viewed in the context of other related statutes, the conclusion is inescapable that only a district attorney may initiate statutory proceedings in the nature of *quo warranto* in Oregon. No other persons have the power to initiate such proceedings on their own.

The foregoing conclusion is fatal to Mabon's case. He is not a district attorney, and he has not been able to obtain the assistance of a district attorney in prosecuting this matter. The absence of that public official's participation defeats Mabon's claim. The trial court correctly dismissed it and the Court of Appeals correctly affirmed that dismissal.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.