Argued and submitted February 28, affirmed May 23, petition for review denied
October 4, 2007 (343 Or 224)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## CARLOS IVAN RODRIGUEZ-BARRERA,
*Defendant-Appellant.*

Marion County Circuit Court
04C44188; A125926

159 P3d 1201

Brandon G. Williams, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief

Defender, Legal Services Division, Office of Public Defense Services.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for, among other things, delivery of a Schedule II controlled substance within 1,000 feet of a school. ORS 457.904. He assigns error to the trial court's denial of a motion for a judgment of acquittal on that charge. According to defendant, the state failed to prove that he had intended drug activity to take place within 1,000 feet of a school. The state argues that the statutes that define the offense require no such proof. We agree with the state and affirm.

The relevant facts are not in dispute. Defendant was driving through Silverton when police officers observed him commit a traffic violation. The officers turned on their overhead lights and followed defendant until he stopped. By the time he stopped, the vehicle happened to be located 440 feet from a school. The lawfulness of the stop is not in dispute.

During the course of the stop, the officers learned that defendant's license was suspended. The officers prepared to have the vehicle towed. As defendant gathered his belongings from the car, the officers observed ammunition and a loaded weapon. At that point, the officers handcuffed defendant, read him *Miranda* warnings, and searched the vehicle. The officers found a glass pipe with drug residue and several small plastic bags containing a white powder that the officers believed to be methamphetamine packaged for sale. The lawfulness of the search is not in dispute, either.

Defendant was charged with, among other things, delivery of a Schedule II controlled substance within 1,000 feet of a school. The state's theory was that defendant was found within 1,000 feet of a school in possession of a sufficient quantity of drugs to indicate that he intended to deliver the drugs. At trial, he moved for a judgment of acquittal. He argued that the only reason that he was found in possession of the drugs within 1,000 feet of a school was that the police officers had directed him to stop his vehicle at that location. According to defendant, the state should be required to prove that he intended to conduct a drug transaction *there*. The trial court denied the motion.

■     On appeal, defendant reprises his contention that the law should be understood to require proof that he intended to engage in drug activity within 1,000 feet of a school. In support of that contention, defendant relies on legislative history that he contends demonstrates that the legislature was concerned with actual drug transactions near schools, not with "a motorist, fortuitously stopped by law enforcement within 1000 feet of a school zone, engaged in the constructive delivery of drugs with no indication that a delivery was aimed at the drug free zone or any students."

The state responds that defendant has ignored the wording of the relevant statutes, which require no proof that defendant intended to engage in a drug transaction within the requisite distance of a school. As for the legislative history, the state contends that the unambiguous wording of the statute forecloses resort to such extrinsic evidence of legislative intent and that, in any event, the history on which defendant relies concerns an earlier version of the law that has since been amended in material respects.

Thus framed, the dispute is one of statutory construction, concerning the intended meaning of the statutes that define the offense of which defendant was convicted. That dispute is resolved by reference to, and application of, familiar principles that require us to ascertain the intended meaning of the relevant statutes by reference to their wording in context and, if necessary, to legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

■■     ORS 475.904(1) provides that, subject to exceptions not pertinent to this case, it is unlawful for any person to "manufacture or deliver a schedule I, II or III controlled substance within 1,000 feet of the real property comprising a public or private elementary, secondary or career school attended primarily by minors." The term "deliver" is one of art in the Criminal Code and refers to "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance whether or not there is an agency relationship." ORS 475.005(8). Possession of a controlled substance with intent to deliver it constitutes an "attempted transfer" within the

meaning of the statute. *State v. Miller*, 196 Or App 354, 361, 103 P3d 112 (2004), *rev den*, 338 Or 488 (2005). And possession of a controlled substance in a quantity that is inconsistent with personal use, when accompanied by possession of materials commonly associated with delivery, is sufficient to establish possession with intent to deliver the controlled substance. *Id.* at 361-62.

In this case, it is undisputed that defendant possessed a quantity of methamphetamine that is inconsistent with personal use. It is further undisputed that, taken with the packaging of the methamphetamine in small plastic bags, the evidence was sufficient to establish possession with intent to deliver, that is, an "attempted transfer" within the meaning of the statutory definition of "delivery" of a controlled substance. Finally, there is no dispute that defendant's possession of the methamphetamine with the intent to deliver occurred within 1,000 feet of a school. Thus, defendant "delivered" a controlled substance within 1,000 feet of a school.

Defendant nevertheless insists that the evidence was insufficient because there was no proof that he possessed the methamphetamine with intent to deliver it *to a location within 1,000 feet of a school*. The short answer to the argument is that the statute requires no such proof. Defendant, in fact, has identified no wording in the statute that supports his contention. His sole contention is that legislative history demonstrates that the legislature intended the relevant statutes to have more limited effect.

As we have noted, the state contends that, under the method of analysis required by *PGE*, we cannot even consider the legislative history, as defendant has not identified an ambiguity in the wording of the statutes. Defendant responds that his resort to legislative history is appropriate under ORS 174.020(1)(b), which provides that, "[t]o assist a court in its construction of a statute, a party may offer the legislative history of the statute."

The state is correct that, in *PGE*, the Supreme Court stated rather categorically that "[i]f, *but only if*, the intent of the legislature is not clear from the text and context inquiry,

the court will then move to the second level, which is to consider legislative history to inform the court's inquiry into legislative intent." 317 Or at 611-12 (emphasis added). Defendant, however, also is correct in noting that, in 2001, the legislature enacted amendments to ORS 174.020, so that the statute now provides that, apparently without the necessity of establishing an ambiguity, "a party may offer the legislative history of a statute." The statute then goes on to provide that "[a] court shall give the weight to the legislative history that the court considers appropriate." ORS 174.020(3).

It may be wondered whether the enactment of the amendments to ORS 174.020 actually altered the existing law in any significant way. Even before the enactment of those amendments parties were permitted to *offer* legislative history to the courts, and the courts were free to give that legislative history the weight that the courts thought appropriate.

The Supreme Court's response to the amendments to ORS 174.020 has been somewhat ambiguous. On occasion, the court has noted the existence of the amendments, but deferred determining their significance because of their delayed effective date. *See, e.g., State v. Makuch / Riesterer*, 340 Or 658, 667 n 6, 136 P3d 35 (2006); *Stevens v. Czerniak*, 336 Or 392, 403 n 12, 84 P3d 140 (2004).

In other cases, however, the court has, without reference to the amendments—and apparently after their effective date—continued to adhere to the rule of *PGE* that resort to legislative history is inappropriate in the absence of an ambiguity. *See, e.g., Pacificorp Power Marketing v. Dept. of Rev.*, 340 Or 204, 215, 131 P3d 725 (2006) ("If the legislative intent is clear after reviewing the ordinary meaning of the text and context, then no further inquiry is necessary."); *State ex rel Dept. of Human Services v. Rardin*, 338 Or 399, 407, 110 P3d 580 (2005) ("If the legislature's intent is clear from the text and context of the statute, then further analysis is unnecessary."); *Walsh Construction Co. v. Mutual of Enumclaw*, 338 Or 1, 10, 104 P3d 1146 (2005) (because first-level analysis "demonstrates the legislature's intent conclusively, we determine that consideration of legislative history is unnecessary").

In still other cases, the court has, without reference to *PGE* or the statutory amendments, consulted legislative history without first addressing whether the statute in dispute is ambiguous. *See, e.g., Roberts v. SAIF*, 341 Or 48, 53, 136 P3d 1105 (2006) (after examining the text of a statute, the court stated that "[a] review of the legislative history confirms that that was the legislature's intent," without identifying any ambiguity); *Mabon v. Wilson*, 340 Or 385, 391, 133 P3d 899 (2006) (after stating that it is "satisfied" that there is no ambiguity when statutory terms are viewed in context, "we nonetheless look to the history of the statute to determine whether that history undercuts in any way our preliminary assessment of the meaning of the wording of [the statute]"); *see also Bobo v. Kulongoski*, 338 Or 111, 117-18, 107 P3d 18 (2005) (same); *O'Donnell-Lamont and Lamont*, 337 Or 86, 105, 91 P3d 721 (2004), *cert den*, 543 US 1050 (2005) (same).

Meanwhile, we, too, have cited the amendments on only a few occasions. *See, e.g., Robert Camel Contracting, Inc. v. Krautscheid*, 205 Or App 498, 503 n 1, 134 P3d 1065 (2006) (mentioning legislative history "because it was offered by the parties," citing ORS 174.020(1)(b)); *Cyrus v. Deschutes County*, 194 Or App 716, 723, 96 P3d 858 (2004) (same). For the most part, we appear to have ignored them, reciting instead the familiar rule of *PGE* that resort to legislative history is not necessary in the absence of an ambiguity. *See, e.g., Godfrey v. Fred Meyer Stores*, 202 Or App 673, 676, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006) (citing *PGE* for rule that we resort to legislative history only "if, after analysis of the text in context, the statute remains ambiguous").

■     Perhaps the best course—at least until the Supreme Court sorts out the matter—is to view the appropriateness of resorting to legislative history in less doctrinal, and more pragmatic terms. It has always been, and continues to be, appropriate for counsel to offer legislative history to the courts. What use the courts will make of that legislative history will depend on whether the history can make a difference. If the wording of a statute is truly capable of one, and only one, reasonable construction then, whatever the legislative history may show, it cannot alter the unambiguous meaning of a statute.

In this case, defendant has not explained how resort to legislative history—even if it stands for the proposition for which he contends, *viz*., that the legislature intended that the offense occur only when a person intends to conduct a drug transaction within 1,000 feet of a school—can make any difference, given the wording of the statute. Aside from that, the legislative history on which he relies does not in fact stand for the proposition for which he contends.

Defendant relies on portions of the legislative history for the proposition that the statute was intended to target actual drug transactions that occur at or near a school. Defendant places particular emphasis on the statement of a district attorney who testified in support of the bill that ultimately became ORS 475.999, stating that "the intent is to charge the people who are dealing in the school," and that "[t]his is a tool to have an impact in dealing with drugs in the school grounds." Testimony, Senate Committee on Judiciary, HB 2369, June 12, 1989, 13 (statement of Dale Penn). He also emphasizes the statement of Senator Hill, who commented that "[t]wo adults, who are not students are subject to a Class A felony if they deliver a controlled substance near a school. That has nothing to do with what we are trying to do." *Id.* at 15.

The problem with defendant's reliance on legislative history is that the history pertains to an earlier version of the law, one that was materially different from its current wording. What is now ORS 475.999 began as House Bill (HB) 2369 in the 1989 Legislative Assembly. In its original version, HB 2369 broadly prohibited *any* delivery of a controlled substance within 1,000 feet of a school. It was, as the staff measure summary explains, based on a federal statute that creates "drug-free school zones." Staff Measure Summary, House Committee on Judiciary, HB 2369, Feb 27, 1989. Witnesses spoke in favor of the bill as creating, in effect, a "safety zone" or a "drug-free school zone" in which no drug activity of any sort would be tolerated. *See, e.g.*, Testimony, House Committee on Judiciary, HB 2369, Feb 10, 1989, Ex O (statement of Alan Tressider, Oregon School Boards Association). There was even discussion of the posting of signs within those zones, to provide notice that drug activity would not be tolerated within the zone. *Id.* Examples of such signs were

shown to the legislature and made part of the legislative record. *Id.*

After passage by the House, however, the bill was amended in the Senate to narrow the reach of the law. Members of the Senate Judiciary Committee expressed concern that, as passed by the House, the bill would apply even if drug activity did not actually involve school children. Testimony, Senate Committee on Judiciary, HB 2369, June 12, 1989, 14 (statement of Sen Jim Hill). As a result, the Senate amended the bill to make it applicable only to delivery of a controlled substance *"to a student or minor* within 1,000 feet" of a school attended primarily by minors. ORS 475.999(1) (1989). It was in the context of those amendments that Senator Hill made the comment—on which defendant places such emphasis—that the law does not apply unless it involves an actual drug transaction involving a student or minor near a school.

In the next legislative session, however, the statute was amended to revert to the original 1989 House formulation and, indeed, to broaden the reach of the law even beyond that. First, HB 2580 added "manufacture" of a controlled substance to the list of activities that may not occur within the specified distance of a school. Second, the legislature *deleted* the phrase "to a student or a minor" from the statute so that the law, as amended, prohibits manufacture or delivery of a controlled substance without regard to whether the drug activity actually involved students or minors.

The legislative history of that revision makes clear that it was intended, in the words of the Chair of the House Judiciary Committee, "to return to a policy that the House of Representatives adopted two years ago with respect to the zone that we cared to protect, as opposed to necessarily just those within the zone." Testimony, House Committee on Judiciary, HB 2580, Mar 20, 1991 (statement of Rep Randy Miller). Similarly, Dale Penn, speaking on behalf of the Oregon District Attorneys Association, testified in support of the amendment before the Senate Committee on Judiciary, explaining that the purpose of the amendment was "to create in your community a drug free zone and to allow your community to organize and to put up warning signs" to provide

notice that drug activity of any kind is not permitted within school zones. Testimony, Senate Committee on the Judiciary, HB 2580, June 11, 1991 (statement of Dale Penn). Penn explained that the idea was to "preserve school zones for children." *Id.*

The staff measure summaries similarly report that the amendment was intended to expand the reach of the law "by banning all drug activity near schools regardless of whether the activity involves children." Staff Measure Summary, House Judiciary Committee, HB 2580 (1991); *see also* Staff Measure Summary, Conference Judiciary Committee on HB 2580 (1991) (noting that the amended law "expands [existing] protection by banning all drug activity near schools regardless of whether the activity involves children").

The foregoing history gives no indication that the legislature intended to limit the reach of the statute to cases in which a defendant can be shown to have intended to complete delivery within 1,000 feet of a school. To the contrary, the legislative history suggests that the legislature intended to return to the policy reflected in the original 1989 House version of the law to, in effect, create a *cordon sanitaire* in which no drug activity can take place, regardless of where a defendant intends a transaction ultimately to be completed. That conclusion is further supported by the fact that the legislature also amended the statute to prohibit "manufacture" of a controlled substance, even if behind closed doors and without any distribution either within or without the drug-free zone. Apparently, the legislature was concerned about the risks of *any* sort of drug activity within the proximity of schools.

In reaching that conclusion, we note that, although the issue is one of first impression in this state, it is an issue that has been the subject of numerous decisions in other jurisdictions, nearly all of which have interpreted similar statutory wording to mean what we have concluded the Oregon statute means.

So-called "drug-free school zone" or "schoolyard" statutes originated with the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 USC § 845a,

which doubled the penalty for "distributing a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational, or secondary school[.]" The law was amended in 1986 to include "manufacturing," PL 99-570 § 1104, 100 Stat 3207, and again in 1988 to include "possessing with intent to distribute" controlled substances within the drug-free zone, PL 100-690 § 6457, 102 Stat 4181. The relevant portion of the statute was renumbered as 21 USC § 860 in 1990. PL 101-647 § 1002, 104 Stat 4789.

Early on, several federal trial courts concluded that proof of possession with intent to distribute controlled substances within a drug-free zone required proof that the defendant intended to distribute at the prohibited location. *See, e.g., United States v. Testa*, 768 F Supp 221 (ND Ill 1991); *United States v. Coates*, 739 F Supp 146, 152-53 (SDNY 1990); *United States v. Liranzo*, 729 F Supp 1012 (SDNY 1990). Those courts reached that conclusion on the basis of the particular phrasing of the statute—the application of the rule of the last antecedent, they concluded, required them to read "within one thousand feet of a school" to modify "intent to distribute," and not "possession"—and on the basis of the rule of lenity.

Since then, however, the appellate courts in seven circuits have addressed the issue, and all seven have reached the contrary conclusion. *See United States v. Ortiz*, 146 F3d 25 (1st Cir 1998); *United States v. Lloyd*, 10 F3d 1197 (6th Cir 1993); *United States v. Hohn*, 8 F3d 1301 (8th Cir 1993); *United States v. Walker*, 993 F2d 196 (9th Cir 1993); *United States v. McDonald*, 991 F2d 866 (DC Cir 1993); *United States v. Rodriguez*, 961 F2d 1089 (3d Cir 1992); *United States v. Wake*, 948 F2d 1422 (5th Cir 1991). *McDonald* illustrates the general thrust of those decisions. In that case, the defendant resided in a rented room of a house located some 90 feet from the edge of an elementary school playground. He was arrested at his room, where the police found $400 in cash and 22 plastic ziplock bags holding crack cocaine. He was charged with possession with intent to distribute, 21 USC § 841(a)(1), and, when convicted, was subject to the doubled penalty under the federal drug-free zone law. The defendant challenged the applicability of that law in the absence of

proof of intent to distribute within 1,000 feet of the school. The Court of Appeals for the D.C. Circuit concluded that the statute required no such proof. The court acknowledged that several lower courts had reached a contrary conclusion. The court explained that it believed those courts to have been in error for two reasons—the specific wording of the statute and the legislative intent that it reflects. *McDonald*, 991 F2d at 869-70.

As to the specific wording, the court noted that the parallel structure of the federal statute defeated any application of the rule of the last antecedent; the federal statute prohibits three actions—"distributing," "possessing," and "manufacturing"—within 1,000 feet of a school. Under the circumstances, the court explained, it is clear that what the law requires is *possession* of controlled substances with the intent to distribute them *somewhere*, not necessarily near a school. *Id.* at 869.

As to the more general legislative intent, the court found significant the fact that Congress had amended the statute to include "manufacturing" controlled substances within the drug-free zone. "[N]othing in § 860," the court explained, "turns on whether the defendant actually involved any students at the nearby school." Instead, the court concluded,

"[t]he judgment § 860 embodies must rest on the desire to give students increased protection from the violence often accompanying serious drug offenses, and from the threat of having their lives corrupted through proximity to drug traffickers and their wares. This must be why manufacturers of controlled substances draw more punishment when they operate near a school. It must be why manufacturing, behind closed doors and unaccompanied by any distribution, is nevertheless within § 860(a)'s condemnation. And in our view it is why possessing drugs with an intention to distribute them anywhere is treated as doubly abhorrent when the possessor is in the vicinity of a school. With intended distribution, as with actual distribution and manufacturing, comes large quantities of drugs, and thus danger."

*Id.* at 869 (citations omitted).

A number of state legislatures, including Oregon's, have enacted drug-free zone laws patterned after the federal statute. *See generally* Ryan Fleming, *Safeguarding Schools: Drug-Free School Zone Acts in the Legal Arena*, 107 Dick L Rev 385 (2002); Julius Menacker and Richard Mertz, *State Legislative Responses to School Crime*, 85 Ed Law Rep 1, 4 (1993). And the state courts interpreting those state statutes appear consistently to have followed the lead of the federal circuit courts in holding that no proof of intent to deliver within the drug-free zone is required. *See, e.g., Commonwealth v. Labitue*, 49 Mass App Ct 913, 914, 731 NE2d 114, 116 (2000) (it is irrelevant that defendant may not have intended to distribute controlled substance within the school zone); *State v. McGee*, 122 Wash 2d 783, 790, 864 P2d 912, 914 (1993) (statute does not require the state to prove that the intended delivery site was within 1,000 feet of a school); *State v. Ivory*, 124 NJ 582, 593-94, 592 A2d 205, 211 (1991) (state is not required to prove that the defendant intended to distribute the substance within 1,000 feet of school property, only that he possessed the substance within 1,000 feet of school property with the intent to distribute it somewhere).

The rulings of courts in other jurisdictions concerning the meaning of other statutes, of course, are not binding on us. But we find persuasive the reasoning of the majority of the courts that have reviewed the issue, particularly their understanding of the apparent intention of Congress in amending the federal statute to include not only a prohibition against delivery, but also of manufacture, of a controlled substance within 1,000 feet of a school, without any reference to the location of intended delivery or the actual involvement of any students or minors. Oregon's legislature adopted the equivalent amendment, and the same reasoning seems to us to apply.

We also find unpersuasive the reasoning of the several federal district courts that have reached a contrary conclusion. First, even assuming the appropriateness of relying on the rule of the last antecedent in interpreting the federal statute, the wording to which those courts applied the rule is different from the wording of the Oregon statute, which

defines "delivery" to include possession in a sufficient quantity to infer an intent to deliver, without any reference to delivery at any particular location. Second, as we have noted, those courts relied on the rule of lenity, which, although venerable, does not apply to the construction of the Oregon Criminal Code. ORS 161.025(2) ("The rule that a penal statute is to be strictly construed shall not apply" to the Oregon Criminal Code.); *Bailey v. Lampert*, 342 Or 321, 327, 153 P3d 95 (2007) ("[T]he legislature has eliminated the availability of any 'rule of lenity' by statute.").

In conclusion, the wording of ORS 457.904 requires proof that defendant possessed controlled substances in a quantity not consistent with personal use and that the possession occur within 1,000 feet of a school. It is undisputed that the state proved those facts. The trial court did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.